UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KAREN MARCUS,

Plaintiff,

DECISION AND ORDER

13-CV-6223L

v.

BARILLA AMERICA NY, INC.,
CARMINE SIMONE,

Defendants.

---

Plaintiff Karen Marcus ("plaintiff") brings this action alleging discrimination in employment on the basis of gender, and retaliation, against her former employer, Barilla America NY, Inc. ("Barilla") and her supervisor, Carmine Simone ("Simone"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. ("Title VII") and the New York Human Rights Law, N.Y. Exec. Law §290 et seq. ("NYHRL"). The defendants now move to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. Proc. 12(b)(6). (Dkt. #8). Plaintiff has cross moved to amend the complaint. (Dkt. #12). For the reasons that follow, defendants' motion to dismiss is granted, plaintiff's cross motion to amend is denied, and the complaint is dismissed.

Plaintiff was hired by Barilla on February 2, 2007 as a Quality Assurance Manager at its Avon, NY plant. She later assumed the title and duties of Quality & Technology Manager and ultimately resigned from Barilla on April 11, 2011. On October 16, 2011, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Barilla and Simone had subjected her to gender-based discrimination. Specifically, she complained that during her tenure at Barilla, Simone repeatedly "yelled, stared down at [her], jerked his head back and forth and bucked his chest out when yelling," causing her to feel threatened and uncomfortable,

and criticized her job performance. (Dkt. #1, Exh. A). On February 26, 2013, the EEOC issued plaintiff a "right to sue" letter. (Dkt. #1, Exh. B). This action followed.

## DISCUSSION

### I. The Standard on a Motion to Dismiss

In reviewing a motion to dismiss, the Court accepts the allegations in the complaint as true. *See Boykin v. KeyCorp*, 521 F.3d 202, 204 (2d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible on its face where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### II. Plaintiff's Discrimination Claims

#### A. Hostile Work Environment

Plaintiff claims that she was subjected to discrimination and harassment, in the form of a hostile work environment. To state a hostile work environment claim, a plaintiff must plausibly allege that "the workplace [was] permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). With regard to claims of gender-based harassment, the plaintiff must allege "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* . . . because of . . . sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks omitted) (emphasis in original). In contrast, the "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII" or state law. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotations marks omitted). *See also*

*Espaillat v. Breli Originals, Inc.*, 227 A.D.2d 266, 268 (1st Dept. 1996) (applying same principles to hostile work environment claims under the NYHRL). At the pleading stage of the case, "plaintiff[] need not plead a prima facie case of discrimination based on hostile work environment, so long as [she] provide[s] in the complaint a short and plain statement of the claim that shows that [she is] entitled to relief and that gives the defendant[s] fair notice of [the claim] and the grounds upon which it rests." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir. 2007), *citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). However, "dismissal is nevertheless appropriate where the plaintiff [has] failed to allege even the basic elements" of a discrimination claim. *Maldonado v. George Weston Bakeries*, 441 Fed. Appx. 808, 809 (2d Cir. 2011) (unpublished opinion).

In evaluating whether conduct arises to the level of a hostile work environment, courts consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. 17 at 23.

Here, plaintiff alleges that during her employment at Barilla: (1) at some point in July 2007, Simone because visibly angry and "yelled" at plaintiff after she disagreed with him about an equipment issue, accusing her of being "the only one here stopping the bus"; (2) on several unspecified occasions between April and August 2007, Simone "continued to yell, intimate and stare down" at plaintiff ; (3) during a meeting between Simone, another manager and plaintiff on August 30, 2007, Simone yelled at plaintiff, told her that she had three months to improve her performance or else lose her job, and placed her on a Performance Improvement Plan ("PIP"); (4) in November 2007, plaintiff called Simone's supervisor, Mike Biegger, and told him that she wished to file a harassment complaint against Simone and a female human resources manager, Tracy Charlebois ("Charlebois"); (5) in April 2009, during plaintiff's yearly performance review, Simone informed plaintiff that an upcoming change to her job title and responsibilities was "mandatory" and that he had "saved" her from termination previously; (6) in May 2010, Simone became angry and yelled at

plaintiff in front of coworkers during a disagreement "over an issue involving product safety," telling plaintiff that he did not support her actions; (7) in June 2010, plaintiff called a manager at another plant, Chris Kruger, to express concerns about the Avon plant, and was "yelled at" by Kruger, who said, "this is bull-crap and if you write this up as a non-conformity issue, I will make this personal and you are not going to like it"; (8) plaintiff believes that Simone may have been "listening on the other line" during the June 2010 phone call with Kruger, and that he failed to intervene when Kruger yelled at her; and (9) in March 2011, Simone lunged toward plaintiff across a desk during a meeting and yelled, "this is my plant and I will call whomever I want, about whatever I want, whenever I want – do you understand me?"'

On April 8, 2011, plaintiff voluntarily resigned from employment at Barilla, effective April 22, 2011.

Although plaintiff peppers her complaint with the words, "threaten," "intimidate," "humiliate" and "harass," the actual conduct she describes –a series of sporadic, isolated incidents in which managers verbally disagreed with plaintiff or criticized her job performance – falls well short, as a matter of law, of describing discriminatory conduct that is objectively threatening, intimidating, humiliating or harassing, let alone so severe or pervasive, as to render her hostile work environment claims plausible.

In sum and substance, plaintiff complains that Simone (and on one occasion, Kruger) raised their voices to her during disagreements concerning equipment and product safety issues at the Avon plant, a handful of times over a five-year period. She also alleges that Simone told her that her job performance needed to improve, and placed her on a PIP. Plaintiff does not allege that these incidents occurred regularly or constantly, or that Simone or Kruger ever employed cursing or other obscene, abusive or misogynistic language, that any comments of a crude, sexual or gender-specific nature were ever made, or that plaintiff was ever ridiculed or humiliated in a manner that suggests a gender-based motive. To the contrary, the conduct and comments she alleges are entirely gender-neutral, and are insufficient to give rise to a plausible hostile work environment claim. *See Kelly v.*

*Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 15-16 (2d Cir. 2013) (affirming district court's dismissal of plaintiff's hostile work environment claim, where plaintiff did not allege sexually explicit behavior or comments of a gender-specific nature); *Raum v. Laidlaw Ltd.*, 1999 U.S. App. LEXIS 8219 (2d Cir. 1999) (unpublished opinion) (affirming district court's dismissal of Title VII hostile work environment claim for failure to state a claim, because although plaintiff alleged that his supervisor repeatedly subjected him to obscene gestures and comments which were not "tinged with offensive sexual connotations [and did not] suggest that [plaintiff] was being targeted based on his gender . . . while [the] alleged remarks may have been crass and offensive, they were not predicated on [plaintiff]'s gender and therefore not actionable under Title VII"); *Edwards v. New York State Unified Court System*, 2012 U.S. Dist. LEXIS 172207 at *12, *14-*15 (S.D.N.Y. 2012) (dismissing hostile work environment claim, because plaintiff's allegations that her supervisors "told her to work all day, yelled at her, and closely monitored her" describe conduct that is insufficiently severe or pervasive to state a claim); *Rissman v. Chertoff*, 2008 U.S. Dist. LEXIS 101514 at *8-*9 (S.D.N.Y. 2008) ("[i]n essence, plaintiff alleges that because he was yelled at [by his supervisors], this must have been because [of his protected status]. Such conclusory and speculative statements are insufficient [to state a hostile work environment claim]"). Although "[n]othing in our Title VII jurisprudence . . . requires a plaintiff to append to each allegation of harassment the conclusory declaration 'and this was done because of my sex,'" courts do require "the allegation of factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment *because of her sex*." *Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir. 2001) (emphasis added).

To the extent plaintiff complains that Simone was critical of her performance, openly disagreed with her concerning certain work-related issues, "yelled" at plaintiff and accused her of being "the only one stopping the bus" and hindering the plant's progress when she identified safety or quality issues, Title VII and the NYHRL are not general civility codes requiring supervisors to engage in unfailingly decorous or diplomatic conduct, and they do not empower courts to act as

super-personnel departments, poised to question the reasonableness or fairness of every supervisor-employee interaction. It is well-settled that a supervisor's mere criticism of an employee's work, however loud, harsh or ham-fisted, does not fall within the ambit of Title VII unless his conduct is so severe, pervasive, offensive and "permeated with discriminatory intimidation" as to alter the terms and conditions of his subordinate's employment. *Harris*, 510 U.S. 17 at 21. *See Marshall v. N.Y. City Bd. of Elections*, 322 Fed. Appx. 17, 18-19 (2d Cir. 2009) (unpublished opinion) (affirming district court's grant of summary judgment on plaintiff's hostile work environment claim, because although plaintiff's "allegations that her supervisor displayed a violent temper, stood over her with clenched fists on several occasions, disparaged her educational background, and engaged in crass behavior are troubling," Title VII "prohibits only harassment that is discriminatory"); *Castro v. N.Y.C. Bd. of Educ. Pers. Dir.*, 1998 U.S. Dist. LEXIS 2863 at *21 (S.D.N.Y. 1998) ("although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions").

Plaintiff's complaint, afforded every favorable inference and assuming the truth of the matters recited therein, simply does not plausibly allege conduct approaching a hostile work environment on the basis of sex. That claim is dismissed.

### B. Retaliation

Claims of retaliation are ultimately analyzed under the familiar *McDonnell Douglas* burden-shifting rules. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 443 (2d Cir. 1999). To establish a *prima facie* claim of retaliation, plaintiff must ultimately prove: (1) that she participated in a protected activity; (2) that the defendant(s) knew of the protected activity; (3) that she suffered an adverse employment action; and (4) that a causal connection exists between plaintiff's protected activity and the adverse employment action. *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000). However, as with plaintiff's hostile work environment claim, at the pleading stage, "the survival of

a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a prima facie case under *McDonnell Douglas*." *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011), *citing Swierkiewicz v*, 534 U.S. 506 at 510 ("[t]he prima facie case under *McDonnell Douglas*... is an evidentiary standard, not a pleading requirement"). As such, the Court does not specifically apply the *McDonnell Douglas* burden shifting test to determine whether plaintiff has stated a retaliation claim, but rather generally assesses the plausibility of the plaintiff's claim, based on the facts as she has alleged them. *See Boykin v. KeyCorp*, 521 F.3d 202, 212-13 (2d Cir. 2008) (a plaintiff's complaint "need only satisfy Rule 8(a)'s standard of a short and plain statement of the claim showing that [she] is entitled to relief") (internal quotation marks omitted).

In determining whether plaintiff has plausibly alleged that she was retaliated-against by the defendants for engaging in protected activity, the Court observes that "protected activity" covers a broad range of actions taken to oppose or protest discrimination, including complaints to management, writing letters of complaint or criticism, and expressing support for oppressed coworkers. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000); *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). An employee's complaint may qualify as protected activity "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated [anti-discrimination] law." *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001).

Naturally, a retaliation claim also requires that the employer be aware of the employee's protected activity: thus, while complaints about discriminatory conduct need not mention discrimination or use any particular verbiage, "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Int'l Healthcare Exh., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007). "The onus is on the speaker to clarify to the employer that [she] is complaining of unfair treatment due to [her]

membership in a protected class and that [she] is not complaining merely of unfair treatment generally." *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991).

Here, plaintiff fails to plausibly allege that she had a reasonable belief that her complaint to Biegger pertained to an unlawful employment practice, and/or that her complaint could have possibly placed Barilla on notice that she was complaining about unlawful discrimination. In her EEOC charge which is attached to the complaint and incorporated therein by reference, plaintiff alleges that, "I called Simone's direct boss, Mike Biegger . . . on November 1, 2007 and stated that I wanted to file a harassment complaint. Mike asked me whom [sic] the claim was against and I told him Simone and [Barilla Human Resources Manager] Tracy [Charlebois] . . . In late March [or] early April 2011, Mike Beigger [sic] returned again to the Avon plant to continue his . . . investigation on Simone . . . I informed Mike that I had come to him almost 4 years ago seeking his help, trying to tell him how Simone was. I also told Mike about the most recent incident where Simone lunged and yelled at me. I also stated for the record, that I was once again reporting Simone's abusive and aggressive behavior." (Dkt. #1-1, Exh. B). *See also* Dkt. #1 at ¶22, ¶31 ("Biegger began his own internal investigation of Simone as Biegger could no longer tolerate all of the hollering, intimidation and harassment from Simone").

Initially, mere allegations that a supervisor has made harsh comments or berated an employee "amount only to general allegations of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject[ed] to gender discrimination." *Drumm v. SUNY Geneseo Coll.*, 486 Fed. Appx. 912, 914 (2d Cir. 2012) (unpublished opinion) (affirming district court's dismissal of employee's retaliation claim for failure to state a claim, where the employee failed to plausibly allege that there was any basis to believe that she was treated differently because of her sex). *See also Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593-94 (2d Cir. 1988) (hospital administrator who complained that a white employee was hired over qualified minority applicants did not make out a prima facie case of retaliation because his objections did not identify "discrimination against particular individuals nor discriminatory

practices" and were thus "directed at something that, as it was alleged, is not properly within the definition of an 'unlawful employment practice'"). Plaintiff's factual allegations, taken as true, do not establish any reasonable basis by which plaintiff could have maintained a good faith belief that Simone or Charlebois were discriminating against her on the basis of gender.

Even assuming *arguendo* that plaintiff reasonably believed that her statements to Biegger amounted to a complaint about unlawful discrimination, those statements did not reference gender-based discrimination or describe conduct that could be inferred to be discriminatory, and thus could not have placed Barilla on notice that plaintiff was engaging in protected activity. Assuming the truth of plaintiff's factual allegations and drawing all reasonable inferences therefrom, plaintiff's complaint was made jointly against both Simone and Charlebois, and described "harassment" and "abusive and aggressive behavior" by Simone. Plaintiff makes no claim that she ever described any gender-related comments or conduct by Simone or Charlebois (or even that any such comments or conduct *ever* took place), or that she ever informed Biegger that she believed that Simone or Charlebois were acting in a manner that was sexually harassing, different from the way they treated male employees, or otherwise motivated in any way by plaintiff's gender. On its face, plaintiff's complaint concerned nothing more than a personality dispute between plaintiff and Simone, and reflected plaintiff's belief that Simone was "angry," "aggressive," "abusive," and/or "harass[ing]," such that working for him was "like working for Hitler." (Dkt. #12-3 at 4). While there was no need for plaintiff to use the term "gender discrimination" in order for Biegger (and by extension, Barilla) to surmise that it was the true subject of plaintiff's complaint, plaintiff's complaint contained no other factual clues that might have "ma[de] the employer aware of alleged discriminatory conduct." *Int'l Healthcare Exh., Inc*, 470 F. Supp. 2d 345 at 357. *See Foster v. Humane Society of Rochester & Monroe County, Inc.*, 724 F. Supp. 2d 382, 394-395 (W.D.N.Y. 2010) (in order to allege that complaints to management comprised protected activity, a plaintiff must allege that she complained about acts of discrimination, and not other issues or work-related problems outside the scope of anti-discrimination statutes); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521-22 (S.D.N.Y.

2010) (while a plaintiff alleging gender-based discrimination "need not have explicitly used the words 'discrimination' or 'gender' to afford [her] complaints protected activity status," if the protected activity "does not lend itself to a reasonable inference of unlawful discrimination, such 'magic words' may be the only way to put the employer on notice that the employee believes [her]self to be complaining of discriminatory conduct") (citation omitted). *See also Sharpe v. MCI Communications Servs., Inc*., 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010). *Accord Kelly*, 716 F.3d 10 at 17 (affirming district court's dismissal of plaintiff's retaliation claim, even though plaintiff alleged she used words like "discrimination" in complaining to her employer, because "[a]lthough particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory").

As such, plaintiff has failed to plausibly allege that she engaged in protected activity about which her employer was aware, and her retaliation claim is dismissed.

Moreover, even assuming *arguendo* that plaintiff had plausibly alleged that her complaint to Biegger was protected activity of which defendants were aware, and furthermore that Simone's placement of plaintiff on a PIP was an adverse employment action which occurred in retaliation therefor (as plaintiff claims in conclusory fashion), plaintiff has not alleged any circumstances suggesting that the imposition of the PIP could possibly have been retaliatory. To the contrary, the PIP was imposed in August 2007 – three months *before* November 1, 2007, when plaintiff alleges that she told Biegger that she wished to file a harassment complaint against Simone and Charlebois. (Dkt. #12-5 at 11). It is axiomatic that in order to be retaliatory, an adverse employment action must take place at some point in time *after* the protected activity by which it was allegedly motivated, and not before. Because the facts alleged by plaintiff do not plausibly state a claim for retaliation, plaintiff's retaliation claim is dismissed.

### C. Plaintiff's State Law Claims

Plaintiff's hostile work environment and retaliation claims under the NYHRL are subject to the same analysis as her claims under Title VII, and as such, her state law claims are dismissed for the reasons stated above. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (the standards for evaluating hostile work environment and retaliation claims under Title VII and the NYHRL are identical). To the extent that plaintiff asserts an additional "individual liability" claim against Simone, that claim is dismissed because plaintiff has failed to allege any underlying predicate violation of her rights under the NYHRL.

## III. Plaintiff's Cross Motion to Amend

Plaintiff has cross moved to amend the complaint to correct its deficiencies. Although plaintiff failed to attach a proposed amended complaint to her initial motion to amend, she has provided one in her reply papers, which the Court has considered in the interest of resolving the plaintiff's motion on the merits. I find that the proposed amended complaint fails to state a plausible claim, and that leave to amend should therefore be denied as futile.

The proposed amended complaint describes plaintiff's job duties in greater detail and provides a more in-depth description of the August 2007 meeting in which plaintiff was placed on a PIP by Simone. (As in the original complaint, plaintiff describes the PIP as an act of "retaliation," notwithstanding the fact that it was first imposed three months prior to the November 2007 complaint to Biegger which plaintiff alleges was the "protected activity" for which she was allegedly retaliated-against). (Dkt. #12-4 at ¶¶10-12, #21-1 at ¶21).

Plaintiff also introduces factual allegations that: (1) Simone, on his own initiative and in further retaliation for plaintiff's November 1, 2007 statement to Biegger that she wanted to file a harassment complaint against Simone, extended the original PIP for an additional four months; (2) in May-June 2008, plaintiff was given a poor performance review score by Simone, resulting in a "nominal raise rather than the normal raise"; (3) plaintiff's job description was changed to

encompass an additional position and she was expected to perform it duties along with her prior duties for the same pay, in contrast to another Barilla plant located in Iowa, where two male employees were paid a higher total salary to perform those duties as two separate jobs; (4) after filing an unspecified complaint against Kruger and being told by Kruger that he would "get [her]" if she did not cease making quality control safety complaints to him, plaintiff was retaliated-against in the form of being forced to sit in on telephone conferences with Simone, Biegger and Kruger to discuss how to improve their working relationships; and (5) at some point, Simone asked plaintiff to take walks and/or go to breakfast with him in order to help improve their troubled working relationship, but never asked any male employees to do the same.

Even assuming the truth of the facts related in the proposed amended complaint and granting plaintiff every favorable inference, the new factual allegations fail to state a plausible claim. With regard to plaintiff's allegation that she was subjected to a hostile work environment because she was made to participate in telephone conferences and asked by Simone to take walks or have breakfast with him for the purpose of improving plaintiff's interpersonal relationships at work, such allegations are insufficient to describe a workplace so permeated with humiliation or ridicule as to give rise to a hostile work environment, even when viewed together with the allegations in the original complaint. Rather, the "gravamen of [plaintiff's] claims is rooted in conduct that amounts to nothing more than workplace dynamics – that is, personal enmity or personality conflicts," and not a hostile work environment. *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, 2011 U.S. Dist. LEXIS 93868 at *11 (S.D.N.Y. 2011) (plaintiff's allegations that supervisors excluded her from meetings, questioned her hours, yelled and talked down to her, excluded her from lunch gatherings, and did not encourage coworkers to assist her, are insufficient to establish a claim for hostile work environment). *See also Petrisch v. HSBC Bank USA, Inc.*, 2013 U.S. Dist. LEXIS 45346 at *50 (S.D.N.Y. 2013).

The facts supplementing plaintiff's retaliation claim are also insufficient to nudge it over the threshold of plausibility. As with the original complaint, plaintiff has again failed to allege that she

engaged in protected activity. She claims only that she told Biegger that she wished to file a non-specific "harassment" claim against Simone and Charlebois, and alleges no additional facts concerning her complaint to Biegger that could have placed Barilla on notice that her complaint related in any way to gender-based discrimination. *See generally Kelly*, 716 F.3d 10 at 17.

Plaintiff's proposed amended complaint also contains newly-asserted claims of disparate treatment and/or unequal pay. Specifically, plaintiff alleges that Simone's criticism and low assessment of her performance during a 2008 review led to a smaller raise than she otherwise might have received, and that a change to her job title resulted in her performing the duties of multiple jobs for no additional pay (while in another plant, two men performed those duties). However, these claims were not raised in plaintiff's EEOC charge (Dkt. #12-3), rendering them unexhausted. Furthermore, they are not sufficiently "reasonably related" to the facts alleged in her administrative charge to excuse her failure to exhaust her administrative remedies with respect to them. Plaintiff's EEOC charge was directed exclusively at her hostile work environment and retaliation claims and primarily alleged facts relating to Simone's intimidating demeanor, and as such, the "scope of the EEOC investigation which [could] reasonably be expected to grow out of the charge of discrimination" would not have included any investigation into plaintiff's salary, title or job duties. *See Colquitt v. Xerox Corp.*, 2013 U.S. App. LEXIS 22242 at *3-*4 (2d Cir. 2013) (unpublished opinion) (plaintiff's claims of failure-to-promote and denial-of-workplace-privileges are not "reasonably related" to the hostile work environment claims contained in her EEOC charge, because the charge contained no factual allegations supporting such claims).

Similarly, to the extent that plaintiff's proposed amended complaint incorporates new factual allegations that plaintiff was retaliated-against for lodging a complaint against Kruger, plaintiff has not alleged, nor does the record demonstrate, that plaintiff ever pursued an EEOC charge relative to that claim, or that the events recited in her prior EEOC charge were in any way reasonably related to a retaliation claim against Kruger.

Plaintiff's proposed amended complaint also seeks to assert a cause of action under the Food Safety Modernization Act ("FSMA"), which protects employees from discrimination or discharge where they make certain disclosures concerning FSMA violations. That claim is not plausible. First, the FSMA was not enacted until January 4, 2011, just three months before plaintiff resigned, and therefore has extremely limited applicability to the facts alleged in her complaint. In any event, plaintiff admits that she has not complied with the jurisdictional prerequisite of filing an administrative complaint with, and obtaining a final order from (or failing to receive a final order within 210 days from), the Secretary of Labor. *See* 21 U.S.C. §399d(b) et seq. ("[a] person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, not later than 180 days after the date on which such violation occurs, file (or have any person file on his or her behalf) a complaint with the Secretary of Labor . . . alleging such discharge or discrimination and identifying the person responsible for such act"). (Dkt. #21-1 at ¶82).

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss (Dkt. #8) is granted, plaintiff's cross motion to amend (Dkt. #12) is denied, and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 21, 2014.